### HAWLEY v. WHITE.

Under the provisions of chapter 200, Revised Statutes, for the relief of poor debtors, the application of the debtor must be made, the place of hearing appointed, and the oath administered, within the county in which the arrest was made.

DEBT upon a bond dated April 15, 1844, executed by one Samuel J. Russell, and the defendant and Bushrod W. Russell, conditioned that "if the said Samuel J. Russell, now a prisoner at the suit of said Charles W. Hawley, shall, one year from the date hereof, apply to the proper authority, and be admitted to take, and shall actually take the oath or affirmation prescribed by law for the relief of poor debtors, or in default thereof shall surrender," &c., then the bond to be void, &c.

The defendant pleaded the general issue, with a brief statement, setting forth, as evidence of compliance with the condition, a formal application to two justices of the peace and of the quorum, in and for the county of Hillsborough, to be admitted to take the prescribed oath for the relief of poor debtors, &c., and that, upon due notice, he was admitted to take the oath, and did take it, &c.

The defendant produced copies of the proceedings, to which the plaintiff objected, because the arrest was made in the county of Sullivan, and the application and admission to take the oath were in the county of Hillsborough.

But the court overruled the objections, and instructed

the jury that the administering the oath in the. county of Hillsborough, and the proceedings there had, were in law a compliance with the condition of the bond. Thereupon a verdict was taken, by consent, for the defendant, subject to be set aside and a new trial granted, according to the opinion of this court upon the case.

*Snow*, for the plaintiff. The proceedings in the county of Hillsborough were void, and the arrest fixes the liability upon the bond.

Before the act of 1813 the question could not have arisen. Until that time proceedings for the relief of poor debtors under arrest were confined to the county in which the arrest was made. 9 N. H. Rep. 63, *Gear* v. *Smith.*

The bond is to be approved by two justices of the county where the arrest is made. The reason is much stronger why the magistrates who administer the oath should reside in the same county.

If the debtor surrenders himself, it must be to the jail in the county of the arrest. The making of the arrest establishes the locality of all subsequent proceedings.

The language of section 1, chapter 200, Revised Statutes, is general; but by sections five and six it plainly appears that justices of the county in which the arrest is made are intended.

In the act of January 3, 1829, the same general language is used; but under that act a case like the one at bar could not have arisen.

If the limit insisted on is not correct, there is no limit, and the debtor might go into any county, and there notify the creditor.

*Metcalf*, for the defendant. Had the legislature intended to confine the jurisdiction to magistrates of the county where the arrest was made, it would have said so. It did so in section three of the act of January 3, 1829. Not so

Hawley *v.* White.

in chapter 200 of the Revised Statutes, under which these proceedings were had. By this change the legislature seems to have intended to give the party the privilege of taking the oath in the county of his residence.

PARKER, C. J. The statute of February 15, 1791, provided that any person committed to prison on mesne process in any civil action, or on execution founded on a proper action of debt, covenant, contract or promise, should be permitted to have a chamber and lodging in any of the houses or apartments belonging to such prison, and liberty of the yard thereto belonging; but not to pass without the limits of the prison yard, &c., such prisoner giving bond to the creditor, &c. The condition of the bond was, that the debtor should continue a true prisoner within the limits of the prison, &c.

It then provided that if the sureties were not approved by the creditor, &c., any two justices of the superior court, court of common pleas, or a justice of the superior court, with a justice of the common pleas, or either of said justices with a justice of the peace, who are disinterested, might approve of the bond.

The second section enacted that the debtor might apply to any two justices of the superior court of judicature, or any two justices of the court of common pleas in the county where such person is committed, or one of the justices of said superior court and one of the justices of said court of common pleas, or to either of said courts, while sitting in the same town where such prisoner is committed, and pray to take the oath, &c. If the oath was administered, a certificate was to be given, directed to the keeper of the jail, stating that the prisoner had taken the oath, and ought, in their opinion, to be discharged. N. H. Laws, pages 153–155, (Ed. 1815).

By the act of June 13, 1796, the justices of the superior court of judicature or court of common pleas, in such

county respectively, were authorized to administer the oath to prisoners committed on executions recovered in actions of traspass, &c. N. H. Laws 155.

It may well be supposed that the approval of the bond was to be made in the county where the debtor was imprisoned; but if this were not clear, from the provisions of the statutes before cited, there can be no doubt that the oath was to be administered in that county, for the debtor could not pass beyond the jail limits without committing an escape.

And, moreover, the language of the statute is precise upon this point: "Any two justices of the court of common pleas, in the county where any such person is committed."

The act of June 23, 1814, provided that any two justices of the peace of the quorum within and for the county in which they reside, shall hereby have power, and be fully authorized, in the same way and manner as justices of the supreme judicial court, or justices of the circuit court of common pleas with a justice of the quorum now, are to administer the oath or affirmation to any person "imprisoned by virtue of any writ of execution," "at any of the gaols within this State." N. H. Laws 159 (Ed. 1815). The second section authorized such justices, when the prisoner was so committed, to approve the bond. N. H. Laws 159 (Ed. 1815). The second section authorized such justices, when the prisoner was so committed, to approve the bond. This act repealed an act of June 24, 1813.

As these acts only extended the authority to other magistrates, who were to perform the action the same way and manner, the oath must still have been administered within the county where the debtor was committed, and by justices of the peace there commissioned.

The act of December 29, 1828, provided for the appointment of commissioners of jail delivery in each county, and that any two of said commissioners should have, "within their respective counties," all the power

and authority vested in any two justices of the superior court, or court of common pleas, to administer the oath. N. H. Laws 480 (Ed. 1830).

And the act of January 3, 1829, authorized the debtor to apply "to any two justices of the superior court of judicature, or of the court of common pleas, or to any two commissioners of the jail delivery, in the county in which they reside," &c. N. H. Laws 477 (Ed. 1830).

But the oath was still to be administered in the county where the debtor was committed, and by the justices in that county, or the commissioners, for the debtor was still in jail, or within the limits. The commissioners were not authorized to go beyond their county, and the debtor could not go to them in another county. A certificate was to be returned to the jailer, &c.

It is very apparent that the jurisdiction was to be executed in the county where the debtor was committed.

The act of July 2, 1831, chap. 30, extended the limits of the jail-yard to the limits of the counties, and then provided that any person arrested upon execution might give bond in the same way and manner as if actually committed to jail on the execution, and be discharged from the arrest. Under this act, however, he was a prisoner, within the enlarged limits, and the oath must have been administered to him in the county in which he was imprisoned, because he could not go beyond the limits of that county.

Then came the act of January 3, 1833, chap. 107, which enacted, that any person arrested on execution might give a bond, in the form of that in the present case, by which the debtor was confined to no limits, but was required to take the oath in the manner prescribed by the laws of the State, within one year, or surrender himself; and the third section provided, that "any two justices of the peace and quorum shall have, within their respective counties, all the powers and authority which now or hereafter may be vested in any two justices of the supe-

rior court, or court of common pleas, or in any two com-
missioners of jail delivery, to administer the oath or affir-
mation prescribed by law," &c.

The fourth section farther provides, that "the applica-
tion to take the oath or affirmation by law prescribed
for the relief of poor debtors, and all subsequent pro-
ceedings thereon," "shall be the same as now provided
in the case of a person committed on execution," so far
as the same are not altered by this act.

This act provided for a certificate that the oath had
been administered, without specifying any address to the
goaler.

It is apparent that, under the late statute, there was
a physical possibility for the debtor to apply in another
county from that in which he had been arrested, but
there is nothing to show that the legislature contem-
plated any such change of jurisdiction, and the third and
fourth sections of the statute show very conclusively that
they did not. There is no clause which speaks of any
transfer or enlargement of jurisdiction, and by the fourth
section the proceedings are to be the same, so far as
they are not altered. The provisions of this act were
incorporated into chapter 200 of the Revised Statutes.

We are of opinion, therefore, that the application must
be made, the place of hearing appointed, and the oath
administered within the county where the arrest was
made. If the proceedings might be in any other county,
the creditor might be practically deprived of his right to
object, or put to great inconvenience in exercising it.

This question was considered in *Green* v. *Cheswell*, Straf-
ford county, December term, 1841, and upon a similar
case there was

*Judgment for the plaintiff.*